HIBBARD, SPENCER, BARTLETT & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7431.    Decided November 12, 1926.

Amounts paid into a fund during each year for pensioning its employees are deductible from gross income for the year as ordinary and necessary expenses of carrying on the petitioner's business, where the facts and circumstances connected with the creation and operation of the fund show that it is a trust and a separate taxable entity.

*David Bluford, Esq.* and *Raymond H. Schultz, Esq.*, for the petitioner.
*John W. Fisher, Esq.*, for the respondent.

The Commissioner has determined deficiencies in income and profits taxes and an overassessment for the following years in the following amounts:

| Year. | Deficiency. | Overassessment. |
|---|---|---|
| 1918 | $28,425.00 | |
| 1919 | 12,563.32 | |
| 1920 | | $7,047.76 |
| 1921 | 3,136.74 | |
| 1922 | 3,852.38 | |

The controversy arises over the alleged error of the Commissioner in refusing to allow, as deductions from gross income in the respective years, the amounts paid by the petitioner in each year to the Hibbard, Spencer, Bartlett & Co. pension fund; in holding that the total of the annual contributions made to the fund by the employees, and of the accrued interest on the entire fund, was income to the petitioner in each year; and, if no trust existed, in disregarding for invested capital purposes the contributions of the employees for years prior to 1918. The facts were stipulated.

### FINDINGS OF FACT.

1. In 1904 the taxpayer submitted to its employees a proposition for the establishment of a pension fund, which was accepted by both

the employees and the taxpayer, and, pursuant thereto the Hibbard, Spencer, Bartlett & Co. Pension Fund, hereinafter called the Pension Fund, was established and has since continued in operation.

2. The following rules and regulations govern the operation and conduct of the Pension Fund and were in effect during the years covered by the deficiency letter referred to in the taxpayer's petition:

RULES AND REGULATIONS GOVERNING HIBBARD, SPENCER, BARTLETT & CO.

State Street Bridge, Chicago

PENSION FUND

1. The word Employer, wherever it shall appear herein, shall be taken to mean Hibbard, Spencer, Bartlett & Co. The personal pronouns he, his and him, wherever appearing herein, unless a contrary intention is clearly expressed, shall be taken to refer to employes of either sex. The word salary, as used herein, means the agreed periodical compensation of the employe and does not include commissions, bonuses, overtime earnings, profit sharing distributions or service dividends.

2. This fund shall be known as "The HIBBARD, SPENCER, BARTLETT & CO. PENSION FUND."

3. The by-laws of Hibbard, Spencer, Bartlett & Co. shall control the maintenance and distribution of said fund in so far as they are applicable and not modified by anything herein contained.

4. Said fund shall be controlled by a Pension Committee of seven, consisting of the President and First Vice-President of Hibbard, Spencer, Bartlett & Co., three Directors to be chosen at the annual meeting of the Board of Directors of said company and two employes, not directors, to be elected annually by the employes. Each member shall serve until his successor is elected. Said committee shall have full power and authority to do all acts necessary to carry out the objects of this pension fund as provided herein. One member of said Committee shall be chosen and act as its secretary. Meetings of said Committee may be called on notice by any member. Vacancies occurring in the Pension Committee may be filled by the Board of Directors of Hibbard, Spencer, Bartlett & Co. Three members of the Committee, including the Chairman of the Board of Directors, or President or First Vice-President, shall constitute a quorum for the transaction of business.

5. With the exception mentioned in Paragraph 7, all employes (including officers) of the Employer, who are eighteen years of age or over (other than persons more than forty years old when last entering the service of the Employer, and country traveling salesmen) shall contribute to this fund and be eligible to receive benefits therefrom as herein provided. By country traveling salesmen is meant all salesmen whose routes are mainly outside of the limits of the city of Chicago.

6. Each employe specified in the preceding section shall contribute to this fund a sum equal to two per cent of his annual salary, not exceeding sixty dollars per annum, to be deducted quarterly from the payment of such salary.

7. Subject to the approval of the Employer, employes of advanced age electing so to do may participate in this fund. By employes of advanced age is meant those who, when last entering the service of the Employer, are more

than forty, but not more than fifty-five years old. Notice of such election must be given in writing to the treasurer of the Employer within ten days after the employe of advanced age enters the service of the Employer. Such notice must state the date of the employe's birth,—day, month and year. If the employe's application is approved by the Employer, its treasurer will give him written notice thereof.

8. The percentage of his annual salary to be contributed to this fund by each male employe of advanced age participating therein shall be determined by subtracting his age at his nearest birthday when last entering the service of the Employer from sixty-five and dividing one hundred by the remainder. In the case of female employes of advanced age participating in the fund, the percentage to be contributed shall be determined by subtracting the age at the nearest birthday when entering the service from sixty and dividing one hundred by the remainder. In each of these calculations fractions under one-half of one per cent shall be disregarded in the result. Fractions of one-half of one per cent or more shall be treated as a whole number. The percentage thus determined shall be the fixed contribution of the employe throughout the period of his service. The contributions of employes of advanced age will be deducted by the Employer from their salaries.

ILLUSTRATION

*Age at Nearest Birthday*

| Age. | Contribution. | | Age. | Contribution. | |
|---|---|---|---|---|---|
| | Males. | Females. | | Males. | Females. |
| | *Per cent* | *Per cent* | | *Per cent* | *Per cent* |
| 41 | 4 | 5 | 49 | 6 | 9 |
| 42 | 4 | 6 | 50 | 7 | 10 |
| 43 | 5 | 6 | 51 | 7 | 11 |
| 44 | 5 | 6 | 52 | 8 | 13 |
| 45 | 5 | 7 | 53 | 8 | 14 |
| 46 | 5 | 7 | 54 | 9 | 17 |
| 47 | 6 | 8 | 55 | 10 | 20 |
| 48 | 6 | 8 | | | |

9. The Employer will contribute each quarter a sum equal to the aggregate payments by the employes during the same period.

10. The pension fund shall remain in the custody of the Employer and all payments provided for in these Rules and Regulations are to be made out of said fund.

11. In case of the voluntary resignation of an employe or his dismissal by the Employer, or such employe becoming a country traveling salesman, or in case suit shall be filed by any such employe against the Employer, or in case the Employer shall become liable to pay compensation to such employe for disability, as provided in any Workmen's Compensation Law, all payments made by him to this fund shall be returned to him, with simple interest at the rate of three per cent per annum, less any amount he may have received from the fund, and his interest in the fund shall thereupon terminate. Interest shall be computed from the first of the year on the contributions for the year next preceding.

Provided that the question of cause for dismissal of any employe by the Employer is to rest wholly in the discretion of said Employer by its proper officer or officers.

12. If any employe contributing to said fund shall die while in the service of the Employer, or while on the pension roll hereby created, all payments made by such employe to said fund shall be paid to his estate with interest as provided in the preceding section. Provided, if any employe shall die intestate his deposit with interest as aforesaid may, in the discretion of the Pension Committee, be paid to his widow, or if he shall be unmarried at the time of his death, to his next of kin, unless said employe shall have filed a notice in writing with the secretary of the Pension Committee directing payment to be made otherwise.

13. Except in cases where there are special reasons to the contrary, it is the policy of the Employer to retire from its service all employes who have reached the age of sixty-five years in case of males, and sixty years in case of females.

14. Male employes who have been continuously in the service of the Employer at its Chicago office for fifteen years or more will be permitted to retire from such service on attaining the age of sixty-five years. After attaining the age of sixty years such employes may be retired by the Pension Committee, at its discretion.

Female employes who have been continuously in the service of the Employer for fifteen or more years, at its Chicago office, will, on attaining the age of sixty years, be permitted to retire from such service.

15. Each employe upon so retiring, or being retired, shall receive from said pension fund, at intervals of two weeks thereafter, a sum equal to two-thirds of his average salary for that period during the previous five years.

Provided that no pensioner shall be paid at the rate of more than fifteen hundred dollars per annum and provided such payments shall not extend beyond a period equal to the time during which such employe has made payments to said fund, except that the pension shall be paid during life to any employe who has contributed continuously to the fund for twenty years or more.

16. An employe who, before attaining the age of sixty-five years in the case of males, and sixty years in the case of females shall seem permanently incapacitated by ill health or affliction for service with the Employer, shall be retired, and may take the benefits provided herein as though such employe had reached the above specified age, such benefits to cease should he again become capacitated for service or engage in any gainful employment without the approval of said Pension Committee.

Provided:

(a) The question of the capacity or incapacity of any such employe is to rest wholly with the Pension Committee.

(b) If the pensioner is or shall become mentally incapacitated, said Pension Committee may, in its discretion, pay the pension of such pensioner to any member of his family; or, if such pensioner has no immediate family, to his guardian or next friend.

(c) When incapacity for work is the result of intemperance or any other cause within the control of the employe no pension shall be paid.

(d) When incapacity or disability results from any cause for which the Employer shall pay compensation, the amount thus paid, whether covered by liability insurance or not, shall be deducted from any payment provided by this pension system.

(e) In no event shall any pension provided in this section be paid during a period longer than the time during which such employe has made payments to this fund.

17. For the period of five years following the death of a male pensioner, an allowance equal to one-half of his pension shall be paid to his widow. This

allowance shall cease on her re-marriage. At her death, if she leaves children, her allowance is to be paid to them or to their guardian until the youngest shall attain the age of eighteen years. The interest of each child in the pension fund shall cease when he or she reaches that age, or on marriage prior thereto. No allowance shall be paid to the widow of a pensioner who married him after he became a pensioner, nor to her children. Neither shall an allowance be paid to a widow who was living apart from her husband at the time of his death, but in such a case it may, in the discretion of the Pension Committee, be paid to his children.

(a) Orphan children of a pensioner shall, subject to the conditions as to payments to children above set forth, receive a like allowance. By orphan children is meant those who have lost both father and mother.

(b) In case the survivors include orphan children and their step-mother, both being entitled hereunder to share in the above allowance, it shall be divided between them, half to the orphan children and half to their step-mother.

(c) The children of a female pensioner shall be pensioned in the same amount, for the same time, and under the same rules and conditions as the children of a male pensioner, but the widower of such female pensioner shall be entitled to no pension.

(d) Payments for minor children having no guardian may be made to a trustee to be named by the Pension Committee.

(e) The Pension Committee may, at its discretion, and to such extent and during such a period as it may determine, permit an indigent father, mother, sister, or brother of a deceased pensioner to share in the benefits provided herein for widows and children.

(f) Provided, that upon the death of any pensioner whose pension has been extended over a period longer than that covered by his contributions to the fund, it shall rest in the discretion of the Pension Committee, to determine whether the above allowance, or any portion of it shall be continued to his surviving relatives, and provided further, that in no event shall the allowance or allowances, created in this paragraph amount to more than half of the stipend paid to the deceased pensioner or to be continued beyond a period of five years from his death.

18. The Directors of the Employer shall have authority, in extraordinary cases, to continue pensions beyond the duration limits herein established.

19. The obligation of the Employer under this pension plan to any person who, in applying for employment in its service, has misrepresented his age, may be satisfied at any time by the return of his deposits in the fund together with three per cent simple interest computed on the deposits of each year from the end of the year; and, thereupon, his interest in the fund shall cease

20. No assignment of a pension will be permitted or recognized by the Employer or the Pension Committee.

21. These Rules and Regulations may be changed at any meeting by the vote of a majority of the Directors of the Employer, provided that such a change shall not cancel the obligation of the Employer to return eventually to each employe, all the money he may have paid into this fund, with simple interest at the rate of three per cent per annum, less any amount such employe may have received from this fund, with the same interest computed thereon.

22. This fund may be liquidated at any time by the vote of a majority of the Directors of said Employer and, in case of such liquidation, each employe who has contributed to this fund shall be repaid the amount he has contributed with simple interest at the rate of three per cent per annum, less

any sums (with the same interest computed thereon) which he has received from this fund; the residue of this fund then remaining to revert to the general treasury of the Employer.

3. A Pension Fund Committee has been in existence continuously since the establishment of the Pension Fund.

4. The taxpayer and the employees have made the payments in said years provided for by said rules and regulations.

5. The Pension Fund Committee established and has continuously maintained a deposit account with the Northern Trust Co. in the name of the Hibbard, Spencer, Bartlett & Co. Pension Fund, and all moneys paid into the Pension Fund have been deposited in said account.

6. No account involving the name of Hibbard, Spencer, Bartlett & Co. other than the Hibbard, Spencer, Bartlett & Co. Pension Fund has been carried with the Northern Trust Co.

7. The moneys deposited in the Hibbard, Spencer, Bartlett & Co. Pension Fund account have at all times been and now are subject to withdrawal only upon checks signed with the name of the Hibbard, Spencer, Bartlett & Co. Pension Fund.

8. The funds or securities belonging to the Pension Fund have been used only for the purposes of the fund in accordance with the rules and regulations.

9. All income of the Pension Fund has been and is now being deposited in the account of the Hibbard, Spencer, Bartlett & Co. Pension Fund account, above described.

10. Since the establishment of the Pension Fund the Pension Fund Committee has continuously maintained a safe deposit box under lease in the vaults of the Northern Trust Co. in which all of the securities of the Pension Fund have been placed for safekeeping, and only the Pension Fund Committee has had access to said box.

11. The Pension Fund Committee alone has from time to time invested the moneys of the Pension Fund in securities and such securities have been placed in the safe deposit box referred to above.

12. Continuously since the establishment of the Pension Fund books of account have been kept for the Pension Fund which are separate and distinct from the general books of account of the taxpayer, and the general books of the latter in no manner reflect any interest in the Pension Fund.

13. Each employee eligible to participate in the Pension Fund signed as part of his contract of employment an agreement to be bound by the rules and regulations of the Pension Fund in the following form:

CONTRACT

No. _____

Name _____
Age _____ Married _____ Single _____
Formerly employed by _____
                                        Chicago _____ 19____

I enter the employ of Hibbard, Spencer, Bartlett & Company with the understanding that I will conform to their rules and give my best and most loyal service. It is agreed I will give a week's notice, in advance if I decide to cancel this contract, and my employers may discharge me upon giving a like notice or by paying me for a week's time. Should I violate any of their rules or if my services do not satisfy my employers at any time, or if I have made any misstatements in my application or omitted information, I waive the week's notice or payment of a week's salary.

Present salary $_____ per week.

I agree to abide by the Rules and Regulations governing the Pension Fund.

_____
Signed _____
No. _____ St.
Telephone No. _____
Department _____.

14. The Pension Fund Committee has paid out of the Pension Fund all of the amounts due to those employees who have become entitled to the benefits provided for under the rules and regulations.

15. The Pension Fund Committee has at all times been composed of the president and first vice president of Hibbard, Spencer, Bartlett & Co., three directors of Hibbard, Spencer, Bartlett & Co. chosen by the board of directors of Hibbard, Spencer, Bartlett & Co., and two employees, as provided in the rules and regulations of the Pension Fund, and in all other respects also the Pension Fund has been operated and managed in accordance with the rules and regulations.

16. The provision for pensions did not render the total compensation of each employee unreasonable.

17. No fiduciary returns on account of the Pension Fund were ever filed, either in the name of Hibbard, Spencer, Bartlett & Co. or of Hibbard, Spencer, Bartlett & Co. Pension Fund Committee.

18. The employees' contributions to the Pension Fund, less withdrawals for the years prior to 1918, amounted to $74,652.52.

19. The interest in the Pension Fund as of December 31, 1917, of $174,996.35, as stated in the deficiency letter, is based on a computation of the amount of the payments to the Pension Fund made by the taxpayer prior to December 31, 1917, plus the earnings of the fund to that date.

OPINION.

MURDOCK: The petitioner contends and the respondent contravenes that under the stipulated facts in this case a valid trust was created, that it was thereafter a separate taxable entity and payments made

to it were deductible from gross income of the petitioner as ordinary and necessary expenses of carrying on a trade or business. In arriving at a decision of this question the rules of law governing the creation of a trust must be examined and applied to these facts.

Perry on Trusts, 6th ed., section 82, states the law as follows:

> Any agreement or contract in writing, made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property or a certain fund shall be held or dealt with in a particular manner for the benefit of another, in a court of equity raises a trust in favor of such other person against the person making such agreement, * * * and the statute of frauds will be satisfied if the trust can be manifested or proved * * * by any writing in which the fiduciary relation between the parties and its terms can be clearly read.

There is abundant authority to support this statement. The Supreme Court of the United States used almost the identical language in *Colton* v. *Colton*, 127 U. S. 300. Mr. Justice Sharswood of the Supreme Court of Pennsylvania expressed the rule succinctly as follows in *Helfenstein's Estate*, 77 Pa. St. 328:

> There is no prescribed form for the declaration of a trust. Whatever evinces the intention of the party that the property, of which he is the legal owner, shall beneficially be another's, is sufficient.

See also *Holden* v. *Circleville Light & Power Co.*, 216 Fed. 490; *Heartley* v. *Nicholson*, L. R. 19 Eq. 233; *Fox* v. *Fox*, 250 Ill. 384; 95 N. E. 498; *Orr* v. *Yates*, 209 Ill. 222; 70 N. E. 731.

In the case we are considering the money paid or contributed by the employer, together with the other money paid into the fund and all accretions, was to be and was held and dealt with for the benefit of the employees under the terms of the agreement. Immediately there was a separation of the legal and equitable estates in the money. So long, at least, as the fund was not liquidated, the employer ceased to be the beneficial owner of the part it had contributed. The respondent argues that " the employer had the same power with reference to this fund, in so far as its own contributions were concerned, as it had with reference to its other funds." But this is not so. For the reasons just stated, as soon as it made a payment to the fund it ceased to have any rights in that payment except a possibility of reversion upon liquidation of the fund. The money could be used for certain purposes prescribed in the regulations and for no other purpose. A court of equity could restrain any attempt to use the fund otherwise than for the purposes of the trust.

Mr. Justice Pitney, in *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Des Moines Union Ry. Co.*, 254 U. S. 196, citing *Colton* v. *Colton*, *supra*, said:

> It needs no particular form of words to create a trust, so there be reasonable certainty as to the property, the objects, and the beneficiaries.

See *In re Smith's Estate*, 144 Pa. St. 428; 22 Atl. 916, where the whole subject is exhaustively treated.

Counsel for respondent attacked the alleged trust on the ground that a trust was not intended and that sufficient words to create a trust were not used, but he cited no authorities in support of his contention. Looking at the agreement of the parties in its entirety and applying the above stated rules of law to the facts, we are led to a different conclusion—that all the elements of a valid trust are present. Our conviction is strengthened by the subsequent acts of the parties.

The employer offered a pension-fund plan to its employees which they accepted. The contract between them went into detail as to the manner of creating the fund, the use of it, and the beneficiaries; it carefully defined the subject of the proposed trust, made certain the object, and contained a sufficient declaration of the terms of the trust. In accordance with the terms of this contract a specific fund arose for the benefit of the specific beneficiaries. The trust has functioned for eighteen years to the apparent satisfaction of all concerned. It is vain to say that no trust existed.

Having decided that the essential elements of a trust are present, let us see if there is anything so repugnant to the contention that a trust was created as to refute it.

No express words of trust were used, but it has been decided many times that none are necessary. Perry on Trusts, 6th ed., section 122; *Colton* v. *Colton, supra; In re Smith's Estate, supra; Richards* v. *Delbridge*, L. R. 18 Eq. 11–13. The employees might change, but this fact is immaterial. *Coe* v. *Washington Mills*, 149 Mass. 543; 21 N. E. 966; *Walters* v. *Pittsburgh & Lake Angeline Iron Co.*, 201 Mich. 379; 167 N. W. 834. Whether the Pension Fund was to " remain in the custody of the employer " or was to be " controlled by a pension committee " is immaterial also, as in either case a trust might or might not exist, depending upon the presence or absence of other essential features. As a matter of fact the Pension Fund Committee accepted and had both the custody and the control of the fund, a situation most favorable to the trust theory.

It is argued that the employer's right under rule 21 to change the rules and regulations is inconsistent with the existence of a trust. In *In re Dolan's Estate*, 279 Pa. St. 582; 124 Atl. 176, the settlor had similar rights and yet it was held that a trust existed. It must also be remembered that a court of equity could restrain any attempt to change the rules and regulations of the Pension Fund which would not be for the best interests of the beneficiaries, and therefore any change in the rules, under the power reserved, would have to be consistent with the general plan of the trust fund already created.

The employer had the right to revoke the trust and to liquidate the fund in the way indicated in rule 22, but it is not essential to the validity of a trust of personal property that it should be irrevocable.

A power of revocation is perfectly consistent with the creation of a valid trust. It does not in any degree affect the legal title to the property. That passes to the donee and remains vested for the purposes of the trust, notwithstanding the existence of a right to revoke it. If this right is never exercised according to the terms in which it is reserved, as in the case at bar, until after the death of the donor, it can have no effect on the validity of the trusts or the right of the trustee to hold the property. *Stone* v. *Hackett*, 12 Gray, 227.

See also *In re Dolan's Estate, supra*, where the court fully discussed the subject of revocation, cited numerous authorities, and said, in part:

It is urged that under the deed of trust the settlor had complete dominion and control of the property; she could alter or amend the trust at any time; no investment or reinvestment could be made without the consent of the husband, and the trustee could be removed at her will; property might be added, and, finally, that the power of revocation effectually retained the title and control completely in her until death, when the trust, qua trust, would effectually operate.

  *    *    *    *    *    *    *

* * * But the right to revoke, unexercised, is a dead thing. Its presence in a deed does not alter the character of the instrument or estate granted; to all intents and purposes, title and possession pass just as effectively as any deed or grant could make it, continuing in that state so long as the power of revocation lies dormant.

To the same effect, see *In re Smith's Estate, supra; Dickerson's Appeal*, 115 Pa. St. 198; 8 Atl. 64; *Lines* v. *Lines*, 142 Pa. St. 149; 21 Atl. 809; *People* v. *Northern Trust Co.*, 289 Ill. 475; 124 N. E. 662; *In re Carnegie's Estate*, 203 App. Div. 91; 196 N. Y. S. 502 (affirmed on appeal without opinion in 236 N. Y. 517; 142 N. E. 266).

We are not impressed with the argument that the composite effect of all of the provisions governing the fund is inconsistent with the idea of a trust.

This Board has already held in the *Appeal of Frank H. Sullivan*, 1 B. T. A. 93, that the question whether expenses are paid for business purposes is always determined from the facts of the particular case. We have also said in the *Appeal of Thomas Shoe Co.*, 1 B. T. A. 124, that contributions must have a reasonable relation to the petitioner's business to be deductible as business expenses.

It is stipulated that the payments were paid or incurred during the taxable years in which they were deducted, and that they did not make the total compensation of each employee unreasonable in amount. We think they were reasonably connected with the petitioner's business, since under the agreement they were to be and were used to benefit and pension employees of the petitioner, thus making employment more attractive and satisfactory to the employee

and inducing him to give and compensating him for faithful service. Employment with the taxpayer entitled the employee to participate in the benefits of the fund, and all employees took advantage of the opportunity. How can it be said that the employer was not benefited by its contributions to the fund? *Appeal of Poinsett Mills*, 1 B. T. A. 6; *Elm City Cotton Mills* v. *Commissioner*, 5 B. T. A. 309. Under all of the facts in the case, we are convinced that the payments made by the petitioner to the Pension Fund were ordinary and necessary expenses of carrying on its trade or business and, as such, were deductible from gross income.

*Judgment will be entered for the petitioner.*

LITTLETON dissents.
GREEN did not participate.