SOUTH PORTO RICO SUGAR COMPANY, Plaintiff and Appellant, *v.* SOL LUIS DESCARTES, SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 10980.   Argued December 2, 1953.—Decided March 10, 1955.

*James R. Beverley, R. Castro Fernández* and *Francisco Castro Amy* for appellant.  *José Trías Monge, Attorney General,* and *Manuel J. Medina Aymat, Assistant Attorney General,* for appellee.

Opinion of the Court delivered by MR. JUSTICE BELAVAL as to the pension question and opinion of MR. JUSTICE BELAVAL, in which MR. JUSTICE MARRERO concurs, as to the interest question.

Only two issues are involved in the present appeal. The first was established as follows: "As to the item of $3,630.77, interest paid during the tax year 1946 to the civil partnership Russell & Co. Sucrs., and claimed in paragraph 26 (d) of the complaint, the parties stipulate the following facts: (a) that the interest was credited in the books (of the taxpayer) to said partnership during said taxable year; (b) that the taxpayer has never been a partner of Russell and Co. Sucrs., nor has the latter ever possessed shares of the taxpayer corporation; that almost all of the taxpayer's shares have always been owned by the South Porto Rico Sugar Company of New Jersey and that almost all the distributable profits of Russell & Co. Sucrs. have always been paid to the common stockholders of the South Porto Rico Sugar Company of New Jersey pursuant to a trust agreement dated April 17, 1917, between said partnership and the American Colonial Bank of Puerto Rico as trustee, and the rest of the distributable profits of said partnership are the profits received by the managing partners of Russell and Co. Sucrs. The taxpayer's contention is that the interest is deductible pursuant to § 32 (a) (2) of the Income Tax Act, as amended by Act No. 107 of May 12, 1943 (Sess. Laws p. 302), which provides:

"(2) All interest paid or accrued within the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) ; the interest upon which is wholly exempt from taxation under this title. *Provided*, That interest shall not be deductible when payable between an individual and a corporation or partnership, nor the interests payable between a corporation or partnership and an individual, when the individual owns or controls, directly or indirectly or through his family, more than fifty (50) per cent of the value of

the outstanding stock of the corporation or more than fifty (50) per cent of the social capital, or between two corporations when one of them owns or controls more than fifty (50) per cent of the outstanding stock of the other corporation, or between two partnerships, when one of them owns or controls more than fifty (50) per cent of the social capital of the other, or between a partnership and a corporation when said corporation owns or controls more than fifty (50) per cent of the social capital of the former, or between a corporation and a partnership when said partnership owns or controls more than fifty (50) per cent of the outstanding stock of said corporation. The same definitions of the term family, corporation, and partnership contained in this Act shall be applicable for the purposes of this section."

The Secretary of the Treasury contends that the interest can not be deducted because, since the South Porto Rico Sugar Co. of New Jersey is a corporation which owns almost the entire stock of the South Porto Rico Sugar Co. of Puerto Rico and which, as trustee controls almost all the distributable profits of Russell and Co. Sucrs., there is the identity of persons or corporate interest between the three organizations contemplated by the exception to deductibility under § 32(a)(2) of the income Tax Act. The trial court agreed with the reasoning of the Secretary of the Treasury and denied the deduction sought. The taxpayer has appealed from said refusal.

In order to eliminate beforehand a large part of the conflict of jurisprudence in the United States on tax matters with respect to so-called holding companies, we should bear in mind that our Constitution contains no prohibition as to the operation of such companies in Puerto Rico; nor does our Act No. 30 of March 9, 1911 (Sess. Laws p. 87) "to establish a Law of Private Corporations" as amended by Act No. 48 of May 13, 1934, (Sess. Laws p. 384) which provides: "All corporations, limited companies, or trust companies, the beneficiary interests of which are represented by stock certificates or transferable shares, shall be considered as affiliates of another corporation, limited partnership, or trust company

within the meaning of this chapter, title, and Act: (a) if they possess or control, directly or indirectly, more than fifty (50) per cent either of the total capital stock or of the voting shares of such corporation, limited company, or trust company; (b) if possessed or controlled, directly or indirectly, by said other corporation, limited company, or trust company; (c) if over fifty (50) per cent of its total capital stock, or of its voting stock, is possessed or controlled, directly or indirectly, by said corporations, limited partnerships, or trust companies, or by the interests possessing or controlling said other corporation, limited partnership, or trust company.

"The existence of intercompany transactions, on a basis other than those of an independent commercial spirit, shall be considered, *prima facie*, as evidence of control or dominion, . . ." Section 5 (a) of the Law of Private Corporations added by the aforesaid Act No. 48.

If this were a case of interest payable between (1) an individual and a corporation or partnership, or (2) between a corporation or partnership and an individual, or (3) between two corporations, or (4) between two partnerships or (5) between a partnership and a corporation or (6) between a corporation and a partnership, it is unquestionable that proof of direct or indirect control by a person, corporation or partnership over another social or corporate entity included in the term of relationship would be sufficient to establish the identity of persons or of interests which constitutes the exception to deductibility under § 32 (a) (2) of the Income Tax Act, as amended by Act No. 107 of May 12, 1943. As to one of the aspects of this case, see *Descartes, Treas.* v. *Tax Court, Sucn. Cautiño,* 71 P.R.R. 230, 234, 235, 236, (Marrero) (1950).

But this case involves a situation which is not expressly regulated by the statute. Three corporate entities come into play in the case at bar, each one presumably with a different corporate function, until otherwise shown. Comparing § 5 (a) of Act No. 48 of May 13, 1934 with § 38 (a) [sic] of that

same Act, the most we could conclude is that Russell and Co. Sucrs., a domestic partnership, as well as South Porto Rico Sugar Co., a domestic corporation, are affiliated entities of South Porto Rico Sugar Co. of New Jersey, a foreign corporation. For the purpose of any taxation study, an affiliated partnership or corporation is the same as a subsidiary partnership or corporation, for the different implied concepts of agency or of directive control have been merged within the same meaning by the most reliable text-writers in all matters concerning taxation, the theory being therefore different from other cases of corporative liability.

The prevailing theory is that the courts cannot disregard the corporate entity in the absence of proof that the different corporate forms are but a mere artifice to conceal a mechanics to evade taxation. Therefore, the presumption of regularity is in favor of the existence of separate entities and whosoever alleges the opposite must prove the sham for the purposes of tax evasion, the demonstration of the fact of the existence of distinct entities alone, in no way authorizing, therefore, disregard of the corporate entity: 1 Fletcher *Cyclopedia of the Law of Private Corporations* 134 et seq. § 43 (1931 Callaghan and Company edition) ; 14 Fletcher *Cyclopedia of the Law of Private Corporations* 1056 § 7034, (1945 Callaghan and Company edition) ; 10-A Mertens *Law of Federal Income Taxation* 234 et seq. § 61.02, (1948 Callaghan and Company edition) and furthermore the pocket supplement corresponding to the year 1954, at page 52; 6 A-Fletcher *Cyclopedia of the Law of Private Corporations* 307 et seq (1950 Callaghan and Company edition) ; II Dewing, *The Financial Policy of Corporations* 966 et seq. specifically at page 972 (1953 edition of The Ronald Press Company) ; Ballantine *on Corporations* 308 § 134, 309 § 135, (Callaghan and Company 1946 edition) ; 14 California Law Review on *Separate Entity of Parent and Subsidiary Corporations.* For the study of the evolution of this theory in the case law of the National Supreme Court, see *Southern Pacific Company* v. *Lowe*, 247 U. S. 330, 337,

62 L. Ed. 1142, 1148, (Pitney) (1918); *Gulf Oil Corporation* v. *Lewellyn*, 248 U. S. 71, 72, 63 L. Ed. 133, 134 (Holmes) (1918); *Eisner* v. *Macomber*, 252 U.S. 189, 213, 214, 64 L. Ed. 521, 531 (Pitney) (1920); *Moline Properties Inc.* v. *Commissioner of Internal Revenue*, 319 U. S. 436, 438, 439, 87 L. Ed. 1499, 1502, (Reed) (1943); *National Carbide Corporation* v. *Commissioner*, 336 U. S. 422, 427, 428, 429, 93 L. Ed. 779, 783, 784 (Vinson) (1949).

In order to pierce the corporate veil, it is not enough to allege the existence of three corporate entities and deduce from such existence the direct or indirect control, unless the statute expressly provides that it is sufficient to prove the direct or indirect control in order to establish the nondeductibility. When the statute is silent as to that particular, it is essential to prove that, irrespective of the existence of the distinct corporate entities, the specific fund or item has been manipulated in such a way as to show a reduction in the taxable income for the corporate entity to which it proves more burdensome, and an increase in the taxable income for the corporate entity to which it proves less burdensome. There is no such evidence in the case at bar and in its absence we cannot pierce the corporate veil even to speculate on its possible effects as to the taxable distribution.

The second question in issue was established as follows: "As to the item of $18,570.61 which the taxpayer delivered to the Bankers Trust Co. of New York, in trust, for a retirement fund, claimed in paragraph 26(e) of the complaint, the parties stipulate the following facts: (a) that said amount was actually delivered for said purpose during the taxable year of 1946 (October 1, 1945 to September 30, 1946); (b) that the aforesaid retirement fund and trust was created pursuant to the trust agreement entitled *"Employees Retirement Plan of South Porto Rico Sugar Co. and its wholly owned subsidiaries*, dated October 1, 1945, introduced and admitted in evidence at the pre-trial conference and marked Exhibit 2 . . . (c) that the Retirement Board created by the

aforesaid trust is composed of directors chosen from the South Porto Rico Sugar Co. and its subsidiaries."

The reason of the trial court for denying the corresponding deduction can be presented as follows: although it was unquestionable that the $18,570.61 had been delivered to the Bankers Trust Co. to be invested by the latter and used in paying whatever pensions might be claimed, said retirement fund would always be at the disposal of the Retirement Board appointed by the directors of the South Porto Rico Sugar Co. of New Jersey and the contributions could be increased or reduced at the convenience of the settlor, the latter reserving the right to terminate the retirement plan and to recover from the Retirement Fund all such money as might appear in its favor in excess of the pensions payable by virtue of former agreements of the Retirement Board. For the reasons just stated it concluded that the Retirement Fund was not deductible because it was one which, in the reality of law, remained in the custody of the corporation and according to § 108 of the Income Tax Regulations No. 1 it would not be deductible. The provision of reversibility of the Plan is as follows: "The respective Boards of Directors of South Porto Rico Sugar Company and/or its subsidiaries may terminate the Plan as to their several employees at any time by giving written notice of termination to the trustee. Except as provided in Section 7, in the event of termination of the plan the Trustee at the direction of the Retirement Board shall use all of the assets of the Plan to the extent adequate for the purpose: First, to provide in full for the pensions which have been theretofore granted; and for pensions of members who have reached normal retirement date at or prior to such termination; Second, to apply the respective shares of all other members in the remaining assets (a) to provide in accordance with this Plan the benefits of the Plan for such other members as continue to participate in the Plan, notwithstanding such termination and (b) to provide for immediate annuities or deferred annuities for such members as shall cease to parti-

cipate in the Plan by reason of the termination; Provided however that the Trustee may distribute their respective shares to such members ceasing to participate in the Plan, as the Retirement Board shall specify in directing such distribution, and provided further that in the event that the share of any such member shall exceed his actuarial reserve, such excess shall be paid to his employer. In the event of termination of the Plan by South Porto Rico Sugar Company and all of the then participating subsidiaries, the balance of any funds remaining after the satisfaction of all liabilities with respect to all members and other beneficiaries under the Plan, shall be returned to south Porto Rico Sugar Company and its subsidiaries in proportion to the excess of the shares of the employees of the Company and the then participating subsidiaries, respectively, over the actuarial reserves of such employees. For the purpose of this section the share of each member who shall not have reached retirement date and shall not have earlier retired pursuant to the provisions of Section 3(b) shall be that proportion of the remaining assets which the amount required as an actuarial reserve for each such member upon the date of termination shall bear to the aggregate of the actuarial reserves so required for all such members; the word 'shares' is used herein merely to designate such proportionate amount of the remaining assets and such use shall not imply that any member has any interest in or rights with respect to such assets other than those expressly provided for in this Plan. The determination of the amounts required to provide pensions and of the amounts required as actuarial reserves shall be made by the Retirement Board with the advice and assistance of a qualified actuary and such determination shall be binding and conclusive upon trustee, all employees, members and persons claiming through or under them."

Section 32(a) (1), as amended by Act No. 159 of May 13, 1941 (Sess. Laws p. 972), in its first provision which declared deductible, "all the ordinary and necessary expenses paid or

incurred during the taxable year in carrying on any trade or business including a reasonable allowance for salaries or other compensations for personal services actually rendered, including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation or partnership has not taken or is not taking title, or in which it has no equity", is identical with § 234 (a) (1) of the United States Income Tax Act of 1924. Our present Income Tax Regulations No. 1 was taken from the Regulations promulgated to enforce the Federal Revenue Act of 1924. Therefore, § 108 of our Regulations No. 1 contains the same provision, to the effect that "amounts paid for pensions to retired employees or to their families or others dependent upon them or on account of injuries received by employees, and lump sum amounts paid or accrued as compensation for injuries are proper deductions as ordinary and necessary expenses . . . No deduction shall be made for contributions to a pension fund held by a corporation, the amount deductible in such being the amount actually paid to the employee," it being identical with the provisions of the Federal Regulations. Hence, in any case where the 1924 Income Tax Act of Puerto Rico and the Income Tax Regulations No. 1 of Puerto Rico, promulgated under Income Tax Act No. 74 of August 6, 1925, is applicable, any contribution to a retirement plan is deductible as an ordinary and necessary expense according to the first provision of § 32 (a) (1) of our Act and of § 108 of our Regulations. In this way we answer the objection raised by the Secretary of the Treasury to the effect that the Regulations are *ultra vires* because our Income Tax Act of 1924, approved August 6, 1925, has no specific provision as to the deductibility of retirement funds.

Where the statute only contains the generic provision of § 32 (a) (1) of our Act as to ordinary and necessary expenses and not the specific provision as to the deductibility of retirement funds, any amounts assigned to such funds are deductible as ordinary and necessary expenses, where the facts and

circumstances connected with the creation and operation of the fund show that the payments were made to a taxable entity separate from the settlor, here the Bankers Trust Company, which is a taxable entity separate from the taxpayer. In such a case where amounts are paid into the retirement fund in possession of an entity other than the taxpayer rather than directly to the employee, it must also be determined whether the taxpayer has any beneficial interest in the amounts contributed to the fund; but the possibility of a reversion upon liquidation of a trust at some indefinite time in the future is not necessarily enough to establish a basis for denying the deduction of the amounts contributed. 4 Mertens 443 and 444 § 25.69 (1942 ed. Callaghan & Company); *Elgin National Watch Co.* v. *Commissioner*, 17 B.T.A. 339, 358, 359 (Arundell) (1929); *Hibbard, Spencer Bartlett & Co.* v. *Commissioner*, 5 B.T.A. 464, 472, (Murdock) (1926).

In the case at bar it is unquestionable that the amounts were paid to a taxable entity other than the taxpayer. The fact alone that the directors of the corporation itself are in charge of the operation of the retirement fund is not sufficient to infer fraud when the rest of the circumstances show the existence of a trust, as held in the case of *Hibbard, Spencer Bartlett & Co., supra.* Nor is the nature of the trust altered by any possible revertible interest which the settlor may obtain in the future upon liquidation of the retirement fund. According to the very clause establishing the liquidation of the trust, this revertible interest would never be equal to the initial contribution to the fund, since it deals with the disposal of any surplus after liquidation. With respect to the mechanics of evasion, the investment being subject to the standard of reasonableness, the Secretary of the Treasury will always have the opportunity to determine whether or not the case is one of reasonable expense within the ordinary course of the business, since any pension payment is a form of additional compensation for services actually rendered. 4 Mertens 440, *supra.* It is obvious that we are not applying

64

here the provisions of § 23 (*p*) of our Income Tax Act of 1954, (Act No. 91 of June 29, 1954) because they are not applicable.

The judgment appealed from will be reversed, and the case remanded to the Superior Court of Puerto Rico, San Juan Part, for further proceedings not inconsistent with this opinion.

Mr. Chief Justice Snyder concurs in the result on the question of the pension and dissents, together with Mr. Justice Pérez Pimentel, on the question of the interest.

Mr. Justice Negrón Fernández concurs in the result.

Mr. Justice Sifre did not participate herein.