58

SOUTH PORTO RICO SUGAR COMPANY, demandante y apelante, *v.* SOL LUIS DESCARTES, SECRETARIO DE HACIENDA, demandado y apelado.

Número 10980.

*Sometido:* 2 de diciembre de 1953. *Resuelto:* 10 de marzo de 1955.

*James R. Beverley, R. Castro Fernández y Francisco Castro Amy,* abogados de la apelante; *Hon. Secretario de Justicia José Trías Monge y Manuel J. Medina Aymat, Procurador Auxiliar,* abogados del apelado.

Opinión del Tribunal emitida por el JUEZ ASOCIADO SEÑOR BELAVAL en cuanto a la cuestión de la pensión, y opinión del JUEZ ASOCIADO SEÑOR BELAVAL, en la cual concurre el

Juez Asociado Señor Marrero, con respecto a la cuestión de los intereses.

Hay solamente dos cuestiones litigiosas envueltas en la presente apelación. La primera de ellas quedó establecida de la siguiente forma: "en cuanto a la partida de $3,630.77 por concepto de intereses pagados durante el año contributivo 1946 a la sociedad civil Russell & Co., Sucrs., y reclamada en el párrafo 26(d) de la demanda, las partes estipulan los siguiente hechos: (a) que dichos intereses fueron abonados en los libros (de la contribuyente) a dicha sociedad durante dicho año contributivo; (b) que la contribuyente nunca ha sido socia de la sociedad Russell & Co., Sucrs., ni esta sociedad nunca ha poseído acciones en la corporación contribuyente; que casi todas las acciones de la contribuyente siempre han sido propiedad de la South Porto Rico Sugar Company de New Jersey y que casi todos los beneficios a repartir de la sociedad Russell & Co., Sucrs., siempre han sido pagados a los accionistas comunes de la South Porto Rico Sugar Company de New Jersey, de acuerdo con el contrato de fideicomiso (*trust agreement*), fechado 17 de abril de 1917, entre dicha sociedad y el American Colonial Bank of Puerto Rico como fiduciario, y el resto de los beneficios a repartir de dicha sociedad son los beneficios que perciben los socios gestores de Russell & Co., Sucrs. La contención de la contribuyente es que dichos intereses resultan deducibles de acuerdo con la sec. 32(a)(2) de la Ley de Contribuciones sobre Ingresos, según quedó enmendada por la Ley núm. 107 de 12 de mayo de 1943 (pág. 303), que dispone:

"(2) Todos los intereses pagados o acumulados dentro del año contributivo sobre sus deudas, excepto sobre deudas incurridas o continuadas para la compra o posesión de obligaciones o valores (que no sean obligaciones de los Estados Unidos emitidas después de septiembre 24 de 1917, y suscritas originalmente por el contribuyente), cuyo interés está totalmente exento de tributación a virtud de este título. Disponiéndose, que no son deducibles los intereses pagaderos entre un individuo y una corporación o sociedad, ni los intereses pagaderos entre una cor-

poración o sociedad y un individuo, cuando el individuo posee o controla directa o indirectamente, o a través de su familia, más del cincuenta (50) por ciento del valor de las acciones emitidas (*outstanding stock*) por la corporación o más del cincuenta (50) por ciento del capital social, o entre dos corporaciones cuando una de ellas posea o controle más de un cincuenta (50) por ciento de las acciones emitidas (*outstanding stock*) por la otra corporación, o entre dos sociedades cuando una de ellas posea o controle más del cincuenta (50) por ciento del capital social de la otra, o entre una sociedad y una corporación cuando dicha corporación posea o controle más del cincuenta (50) por ciento del capital social de aquélla, o entre una corporación y una sociedad cuando dicha sociedad posea o controle más del cincuenta (50) por ciento de las acciones emitidas (*outstanding stock*) por dicha corporación. Para los fines de esta sección son aplicables las mismas definiciones de familia, corporación y sociedad contenidas en esta Ley."

La contención del Secretario de Hacienda es que dichos intereses no pueden ser deducidos porque resultando la South Porto Rico Sugar Company of New Jersey, una corporación que posee como dueña casi todas las acciones de la South Porto Rico Sugar Company de Puerto Rico y que controla como fiduciaria casi todos los beneficios a repartir de la "Russell & Co., Sucrs.", entre las tres organizaciones existe la identidad de persona o interés corporativos que contempla la excepción de deducibilidad de la sec. 32 (*a*) (2) de la Ley de Contribuciones sobre Ingresos. La ilustrada Sala sentenciadora estuvo conforme con el razonamiento del Secretario de Hacienda y denegó la deducción solicitada. De dicha denegación apeló ante nos la contribuyente.

Para eliminar previamente la mayor parte del conflicto de la jurisprudencia norteamericana, en materia de contribuciones, sobre las llamadas compañías tenedoras (*holding companies*) es bueno recordar que nuestra Constitución no tiene ninguna prohibición en cuanto a las operaciones de tales compañías en Puerto Rico. Tampoco la tiene nuestra Ley núm. 30 de 9 de marzo de 1911 "para poner en vigor una Ley de Corporaciones Privadas", según quedó enmendada

por la Ley núm. 48 de 13 de mayo de 1934 (pág. 385), que dispone: "todas las corporaciones, compañías limitadas o fideicomisos, cuyos intereses beneficiarios estén representados por certificados de participación o acciones transferibles se considerarán como afiliadas a otra corporación, sociedad limitada o fideicomiso dentro del significado de este capítulo, título y Ley: (*a*) en caso de que posean o controlen, directa o indirectamente, más del 50 por ciento bien del capital total en acciones o de las acciones con derecho a votar de dicha otra corporación, compañía limitada o fideicomiso; (*b*) en caso de que sea poseída o controlada directa o indirectamente por dicha otra corporación, compañía limitada o fideicomiso; (*c*) en caso de que más del 50 por ciento del total de su capital en acciones o de sus acciones con derecho a votar fuere poseído o controlado directa o indirectamente por dichas corporaciones, sociedades limitadas o fideicomisos o por los intereses que posean o controlan dicha otra corporación, sociedad limitada o fideicomiso. La existencia de transacciones entre compañías sobre una base que no sean aquéllas que se hicieren con un espíritu comercial independiente, se considerarán *prima facie* como evidencia de control o dominio . . ." Sec. 5 (*a*) de la Ley de Corporaciones Privadas, adicionada por la referida Ley núm. 48.

Si se tratara de un débito de intereses entre (1) un individuo y una corporación o sociedad, o (2) entre una corporación o sociedad y un individuo, o (3) entre dos corporaciones, o (4) entre dos sociedades, o (5) entre una sociedad y una corporación, o (6) entre una corporación y una sociedad, es indudable que la prueba del control directo o indirecto por una persona, corporación o sociedad sobre la otra entidad corporativa o social incluída en el término de relación, sería suficiente para dejar demostrada la identidad de personas o de intereses que constituye la excepción de la deducibilidad de acuerdo con la sec. 32 (*a*) (2) de la Ley de Contribuciones sobre Ingresos, según quedó enmendada por la Ley núm. 107 de 12 de mayo de 1943. En cuanto a uno de

los aspectos de esta cuestión, véase *Descartes, Tesorero* v. *Tribunal de Contribuciones, Sucn. Cautiño,* 71 D.P.R. 248 (*Marrero*) (1950), cita precisa a las págs. 252, 253 y 254.

Pero en este caso se trata de una situación que no está expresamente regulada por el estatuto. En este caso entran en juego tres entidades corporativas, cada una presumiblemente con una función corporativa distinta, mientras no se le pruebe lo contrario. Comparando la sec. 5 (*a*) de la Ley núm. 48 de 13 de mayo de 1934 con la sec. 38 (*a*) de la misma Ley, a lo más que podríamos llegar es a la conclusión, que tanto Russell & Co., Sucrs., sociedad doméstica, como South Porto Rico Sugar Company, corporación doméstica, resultan ser entidades afiliadas a la South Porto Rico Sugar Company of New Jersey, corporación extranjera. Para cualquier estudio contributivo resulta lo mismo una sociedad o corporación afiliada, que una sociedad o corporación subsidiaria, pues los distintos conceptos de agencia o de control directivo implícitos, han sido unificados dentro de una misma significación por los tratadistas más confiables en todo lo referente a contribuciones, siendo por lo tanto distinta la teoría a otros casos de responsabilidad corporativa.

La teoría general es que los tribunales no pueden descartar la diversidad corporativa (*corporate entity*), en ausencia de prueba en el sentido, que las distintas formas corporativas no son nada más que un artificio para encubrir una mecánica de evasión contributiva. De manera pues, que la presunción de regularidad es en favor de la existencia de entidades distintas, y que todo aquél que alegue lo contrario, debe probar la simulación fraudulenta (*sham*) para los fines de evasión contributiva, no autorizando, por lo tanto, la simple demostración del hecho de existir distintas entidades corporativas, ninguna inferencia contraria a la legalidad de las estructuras corporativas (*disregard of the corporate entity*) : 1 Fletcher *Cyclopedia of the Law of Private Corporations* 134 et seq., sec. 43, (ed. de Callaghan and Company de 1931) ; 14 Fletcher *Cyclopedia of the Law of Private Corporations*

1056, sec. 7034, (ed. de Callaghan and Company de 1945) ; 10–A Mertens *Law of Federal Income Taxation* 234 et seq., sec. 61.02, (ed. de Callaghan and Company de 1948) y además el suplemento de bolsillo correspondiente al año 1954 a la pág. 52; 6–A Fletcher *Cyclopedia of the Law of Private Corporations* 307 et seq., (ed. de Callaghan and Company de 1950) ; II Dewing, *The Financial Policy of Corporations* 966 et seq., especialmente a la pág. 972 (ed. de The Ronald Press Company de 1953) ; Ballantine *on Corporations* 308, sec. 134, 309, sec. 135, (ed. de Callaghan and Company de 1946) ; 14 Calif. L. Rev. 12 sobre *Separate Entity of Parent and Subsidiary Corporations.* Para el estudio de la evolución y de esta teoría en el repertorio del Tribunal Supremo de Estados Unidos, véase *Southern Pacific Company* v. *Lowe,* 247 U. S. 330, 62 L. Ed. 1142, (Pitney), (1918), cita precisa a la pág. 337 U. S., 1148 L. Ed; *Gulf Oil Corp.* v. *Lewellyn,* 248 U. S. 71, 63 L. Ed. 133, (Holmes), (1918), cita precisa a la pág. 72 U. S., 134 L. Ed; *Eisner* v. *Macomber,* 252 U. S. 189, 64 L. Ed. 521 (Pitney), (1920), cita precisa a las págs. 213 y 214 U. S., 531 L. Ed; *Moline Properties Inc.* v. *Commissioner of Internal Revenue,* 319 U. S. 436, 87 L. Ed. 1499, (Reed), (1943), cita precisa a las págs. 438, 439 U. S., 1502 L. Ed.; *National Carbide Corporation* v. *Commissioner,* 336 U. S. 422, 93 L. Ed. 779, (Vinson), (1949), cita precisa a las págs. 427, 428, 429 U. S., 783 y 784 L. Ed.

Para descorrer el velo corporativo pues, no basta alegar la existencia de tres entidades corporativas y deducir de dicha existencia el control directo o indirecto, a menos que así no lo provea expresamente el estatuto, determinando que basta que se pruebe el control directo o indirecto para que la indeducibilidad quede establecida. Cuando el estatuto no tiene una declaración expresa sobre el particular, es necesario probar que, independientemente de la existencia de las diversas entidades corporativas, determinado fondo o partida se ha manipulado en tal forma que demuestra una reducción en el ingreso tributable para el organismo corpora-

tivo al cual resulte más oneroso y un aumento en el ingreso tributable para el organismo corporativo al cual resulte menos oneroso. No existe tal prueba en este caso, y en ausencia de ella, no podemos descorrer el velo corporativo, ni siquiera para especular sobre sus posibles efectos en cuanto a la distribución contributiva.

En cuanto a la segunda cuestión litigiosa envuelta, la misma quedó establecida de la siguiente forma: "en cuanto a la partida de $18,570.61 que la contribuyente entregó al Bankers Trust Co. of New York, en fideicomiso, como fondo de pensiones, reclamada en el párrafo 26 (e) de la demanda, las partes estipulan los siguientes hechos: (a) que dicha cantidad fué realmente entregada con dicho fin durante el año contributivo de 1946 (octubre 1ro., 1945 a septiembre 30, 1946); (b) que el referido Fondo de Pensiones y fideicomiso fué creado de acuerdo con el *Trust agreement* titulado *"Employees Retirement Plan of South Porto Rico Sugar Co. and its wholly owned subsidiaries* de fecha 1ro. de octubre de 1945, presentado y admitido en evidencia en el *pretrial conference* y marcado exhibit 2...; (c) que la Junta de Retiro (*Retirement Board*) creada por el referido fideicomiso está compuesta de directores escogidos de la South Porto Rico Sugar Co. y de sus subsidiarias."

La razón que tuvo la ilustrada Sala sentenciadora para denegar la deducción correspondiente, podría presentarse de la siguiente manera: aunque no existía duda en cuanto a que los $18,570.61 habían sido entregados a la Bankers Trust Company, para ser invertidos por ésta y dedicados a satisfacer las pensiones reclamables, dicho fondo de pensiones estaría siempre a la disposición de una Junta de Retiro nombrada por los directores de la South Porto Rico Sugar Company de Nueva Jersey, las cantidades aportables podían ser aumentadas o disminuídas a conveniencia de la fideicomitente, reservándose la fideicomitente el derecho a dar por terminado el plan de pensiones y a recuperar todo el dinero que en el Fondo de Pensiones figurase a su crédito y que fuere en ex-

ceso de las pensiones pagaderas en virtud de acuerdo a anteriores de la Junta de Retiro. Por todo ello llegó a la conclusión, que el Fondo de Pensiones no era deducible por tratarse de un fondo, que en realidad de derecho, estaba en posesión de la corporación y de acuerdo con el art. 108 del Reglamento núm. 1 de Contribuciones sobre Ingresos, el mismo no sería deducible. La disposición de reversibilidad del plan establece lo siguiente: "Las respectivas juntas de directores de la South Porto Rico Sugar Company y/o sus subsidiarias podrán terminar el plan de pensiones con respecto a algunos empleados, en cualquier momento, notificándolo por escrito a la fiduciaria; excepto como se provee en la sección 7, en el caso de terminación, la fiduciaria, bajo las instrucciones de la Junta de Retiro podrá usar todos los fondos del plan de pensiones, y en la medida adecuada para dicho propósito, para los siguientes fines: primero, para proveer en su totalidad sobre las pensiones concedidas hasta ese momento, y las pensiones de los otros miembros que han alcanzado el derecho a retirarse antes de la fecha en que dicho plan de pensiones haya sido terminado; segundo, para utilizar las respectivas participaciones de todos los miembros restantes en el activo sobrante: (a) en proveer, de acuerdo con los términos del plan, los beneficios del mismo, para los miembros restantes que continúan participando del plan, a pesar de su terminación, (b) en proveer anualidades inmediatas o diferidas para aquellos miembros que cesan de participar en el plan por razón de su terminación; disponiéndose, sin embargo, que la fiduciaria puede distribuir sus respectivas participaciones a aquellos miembros que cesen de participar en el plan, según lo acuerde la Junta de Retiro; y disponiéndose además, que en el caso que cualquiera participación de cualquier miembro exceda de su reserva actuarial, dicho exceso deberá ser pagado a su patrono. En caso de la terminación del plan de pensiones por la South Porto Rico Sugar Company y por todas las subsidiarias que estén participando en el mismo a dicha fecha, el sobrante

de cualesquier fondos restantes después de haberse satisfecho todas las responsabilidades con relación a todos los miembros y otros beneficiarios bajo dicho plan, será devuelto a la South Porto Rico Sugar Company y sus subsidiarias en proporción al exceso que sobre la reserva actuarial para dichos empleados arrojan las participaciones de los empleados de la compañía y sus subsidiarias participantes a la fecha de la terminación respectivamente. Para los efectos de esta sección la participación de cada miembro que no esté dentro de la fecha de retiro y que no se haya retirado de acuerdo con las disposiciones de la sección 3(b) será la proporción que con relación al sobrante de fondos tenga la cantidad requerida por la reserva actuarial para cada miembro a la fecha de terminación con el total de las reservas actuariales requeridas para todos los miembros; la palabra participaciones (*shares*) se usa aquí meramente para designar una cantidad proporcionada dentro del fondo sobrante y tal acepción no debe implicar que cualquier miembro tiene algún interés o derecho en relación con cualquiera otros fondos que no sean los provistos expresamente en este plan; la determinación de las cantidades requeridas para proveer pensiones y de las cantidades requeridas para las reservas actuariales, será hecha por la Junta de Retiro con el consejo y ayuda de un actuario competente y tal determinación será obligatoria y concluyente para la fiduciaria, los empleados, los miembros y cualesquiera personas que reclamen en representación de ellos."

La sec. 32(a)(1) según enmendada por la Ley núm. 159 de 13 de mayo de 1941, ((1) pág. 973), en su primera disposición, que declara deducibles, "todos los gastos ordinarios y necesarios pagados o incurridos durante el año contributivo en la explotación de cualquier industria o negocio, incluyendo una cantidad razonable para sueldos u otras compensaciones por servicios personales realmente prestados, incluyendo cánones de arrendamiento u otros pagos que haya que hacer como condición para continuar usando o poseyendo

propiedad sobre la cual la corporación o sociedad no ha adquirido o no está adquiriendo título, o en la cual no tiene participación", es idéntica a la sec. 234(a)(1) de la Ley de Rentas de 1924 de Estados Unidos. Nuestro actual Reglamento núm. 1 de Contribuciones sobre Ingresos fué tomado del reglamento que se preparó para poner en vigor la Ley de Rentas de 1924 de Estados Unidos. Por lo tanto el art. 108 de nuestro Reglamento núm. uno contiene la misma disposición, en cuanto a que "las cantidades pagadas como pensiones a los empleados retirados o a sus familias o a cualesquiera otras personas que dependieran de ellos, o a cuenta de daños recibidos por dichos empleados o por cualquier cantidad global pagada o acumulada como compensación por daños, son deducciones que resultan apropiadas como gastos ordinarios y necesarios...ninguna deducción será hecha por aportaciones a un fondo de pensiones en poder de la corporación, siendo en tal caso deducible solamente cualquiera cantidad que ya haya sido pagada al empleado", es idéntica a la disposición del reglamento federal. Porque ésto es así, resulta que en cualquier caso donde resulte aplicable la Ley de Contribuciones sobre Ingresos de 1924 de Puerto Rico y el Reglamento núm. 1 de la Ley de Contribuciones sobre Ingresos de Puerto Rico, promulgado de acuerdo con la Ley núm. 74 de agosto 6 de 1925, (pág. 401), todo desembolso para un plan de pensiones hay que considerarlo deducible como gasto ordinario y necesario, de acuerdo con la primera disposición de la sec. 32(a)(1) de nuestra Ley y el art. 108 de nuestro Reglamento. En esta forma queda contestada la objeción del Secretario de Hacienda en el sentido que el Reglamento resulta *ultra vires* por no contener nuestra Ley de Contribuciones sobre Ingresos de 1924, aprobada el 6 de agosto de 1925, una disposición específica sobre la deducibilidad de los fondos de pensiones.

Cuando el estatuto sólo contiene la disposición genérica de la sec. 32(a)(1) de nuestra Ley, sobre gastos ordinarios y necesarios, y no la disposición, específica sobre la deducibili-

dad de los fondos de pensiones, cualesquiera cantidades asignadas a dichos fondos son deducibles como gastos ordinarios y necesarios, cuando los hechos y las circunstancias que rodean la creación y la operación de dichos fondos demuestran, que los pagos fueron hechos a una entidad contributiva distinta al fideicomitente; en este caso al Bankers Trust Company, que resulta entidad contributiva distinta al contribuyente. En el caso que el pago sea hecho al fondo de pensiones en poder de otra entidad distinta al contribuyente y no al empleado directamente, debe también determinarse si el contribuyente, puede tener algún interés beneficial en las cantidades con que contribuye al sostenimiento del fondo; pero la posibilidad de que algún interés revierta a su beneficio cuando el fondo se liquide en algún momento indefinido en el futuro, no es suficiente para que se le niegue la deducción de las cantidades con las cuales ha contribuído para su creación: 4 Mertens 443 y 444, sec. 25.69 (ed. de Callaghan & Company de 1942) ; *Elgin National Watch Co.* v. *Commissioner*, 17 B.T.A. 339 (*Arundell*), (1929), cita precisa a las págs. 358 y 359; *Hibbard, Spencer Bartlett & Co.* v. *Commissioner*, 5 B.T.A. 464, (*Murdock*), (1926), cita precisa a la pág. 472.

En este caso no hay duda de que las cantidades fueron hechas a una entidad contributiva distinta a la del contribuyente. El hecho escueto de que sean los propios directores de la corporación los que tengan la dirección de los negocios del fondo, no es suficiente para inferir de él ningún intento fraudulento, cuando el resto de las circunstancias demuestran la existencia de un fideicomiso, según lo resuelve el caso de *Hibbard, Spencer Bartlett & Co.* antes citado. Tampoco desvirtúa la naturaleza del fideicomiso cualquier posible interés revertible que pueda obtener el fideicomitente en el futuro, si el fondo de pensiones llegare a liquidarse. De acuerdo con la propia cláusula donde se establece la liquidación del fideicomiso, este interés revertible nunca sería igual a la aportación original del fondo, pues se trata de

la disposición de cualquier excedente (*surplus*) después de la liquidación. En cuanto a la mecánica de evasión, estando la inversión sujeta a la norma de razonabilidad, el Secretario de Hacienda tendrá siempre oportunidad de determinar, si se trata o no se trata de un gasto razonable dentro del curso ordinario del negocio, pues cualquier pago por pensión, se considera como una compensación adicional por servicios ya rendidos, 4 Mertens 440 (ed. citada). Es obvio que en este caso no estamos aplicando las disposiciones de la sec. 23 (*p*) de nuestra Ley de Contribuciones sobre Ingresos de 1954, (Ley núm. 91 de 29 de junio de 1954, (1) pág. 475), por no ser aplicables al caso.

*Debe revocarse la sentencia apelada, y devolverse el caso al Tribunal Superior de Puerto Rico, Sala de San Juan, para ulteriores procedimientos no incompatibles con esta opinión.*

El Juez Presidente Sr. Snyder concurre en el resultado en cuanto a la pensión, y disiente en unión del Juez Asociado Sr. Pérez Pimentel en cuanto a los intereses.

El Juez Asociado Sr. Negrón Fernández concurre en el resultado.

El Juez Asociado Sr. Sifre no intervino.